**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| THE ARK INITIATIVE, ) <br> 7 East North Street, ) <br> Pinedale, WY 82941, ) <br> ) <br> DONALD DUERR, ) <br> 7 East North Street, ) <br> Pinedale, WY 82941, ) <br> ) <br>     Plaintiffs, ) <br> ) <br>         v. ) <br> ) <br> THOMAS TIDWELL, ) <br> U.S. Forest Service, ) <br> 1400 Independence Avenue SW, ) <br> Washington, DC  20250, ) <br> ) <br>     Defendant. ) <br> _____) | Civ. No. <br><br><br><br><br> Related Case to *The Ark Initiative v. United States Forest Service*, Civ. No. 1:12-cv-640 (D.D.C.) (CKK) |

**VERIFIED COMPLAINT FOR**
**DECLARATORY AND INJUNCTIVE RELIEF**

1. This is an action under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 500-706, for declaratory and injunctive relief, challenging the U.S. Forest Service's ("Service" or "USFS") partial denial, without any explanation, of Plaintiff The Ark Initiative's ("TAI") July 16, 2012 emergency petition to suspend the Service's special use authorization to a private company for the purpose of cutting hundreds of trees to facilitate several new ski runs near Aspen, Colorado.

2. In its petition, Plaintiff TAI advised the Service of new factual information indicating that the affected area had been erroneously omitted from an adjacent inventoried roadless area known as the Inventoried Burnt Mountain Roadless Area ("IBMRA"). *See* Exhibit 1 (July 16, 2012 Emergency Petition). On August 17, 2012, after considering TAI's request, the

agency granted the request in part by agreeing not to authorize any tree cutting for an egress trail that was originally included in the IBMRA, but denied in cursory fashion the remainder of Plaintiff's request to suspend the special use authorization to cut trees to construct three new ski runs on Burnt Mountain adjacent to both the IBMRA and the Snowmass Ski Area. *See* Exhibit 2 (August 17, 2012 Partial Denial). The Service did not provide any explanation for the partial denial nor did it in any way address the new information submitted in Plaintiff TAI's petition indicating that this entire parcel is in fact roadless and therefore not suitable for tree cutting and related ski activities under USFS regulations. Rather, the Service simply stated that it was working with the Aspen Skiing Company on an implementation schedule for the tree cutting activities on Burnt Mountain there that are governed by the special use authorization.

3.  On August 31, 2012 – only two weeks after the date of the Service's petition denial, and just over one week after Plaintiff obtained a copy of the denial (August 22, 2012) – the Aspen Times reported that the Aspen Skiing Company was proceeding with tree cutting on Burnt Mountain in the area that was the primary subject of Plaintiff's petition, notwithstanding the fact that the information submitted in the petition suggests that the area satisfies the agency's own conditions for inclusion in its roadless inventory, and thus cannot be developed in this manner since it would permanently eliminate the parcel's roadless characteristics.

## JURISDICTION

4.  This Court has jurisdiction over this action and venue is proper in this district under 28 U.S.C. § 1331, 28 U.S.C. § 1391(e), and 5 U.S.C. § 703.

## PARTIES

5.  Plaintiff The Ark Initiative is a nonprofit charitable public-interest organization dedicated to saving Earth's species. The Ark Initiative uses three primary approaches to achieve

its mission: (1) work to educate the public and government officials about the importance of protecting wild places and biological diversity, (2) use civil and lawful advocacy methods to encourage actions that better protect native species and their habitats, and (3) serve as a think-tank to develop novel strategies for conserving wildlife.

6. In particular, The Ark Initiative has worked to protect the Burnt Mountain environment adjacent to the Snowmass Ski Area, which is regularly used and enjoyed by The Ark Initiative's supporters and board members for recreation, photography, hiking, and related activities. As part of that effort, the organization has requested public documents from the Defendant Forest Service to understand potential impacts posed by activities that the Forest Service has authorized on Burnt Mountain and the Snowmass Ski Area. That document request is the subject of a pending lawsuit in this district – *The Ark Initiative v. U.S. Forest Service*, Civ. No. 1:12-cv-640 (D.D.C.) (Kollar-Kotelly, J.).

7. Plaintiff Donald Duerr is an environmental consultant, and serves as the Director and President of TAI. For nearly twenty-five years Mr. Duerr has participated in National Environmental Policy Act decisionmaking processes for countless National Forest management activities in the Rocky Mountain region, including on the White River National Forest in Colorado, and the Snowmass area in particular. Mr. Duerr has visited the White River National Forest and hiked in various roadless lands near Snowmass and Aspen, Colorado, including Burnt Mountain. He uses and enjoys the public lands and natural resources of the White River National Forest, including Burnt Mountain and the lands in and around the Snowmass Ski Area, for many recreational, scientific, spiritual, educational, aesthetic, and other purposes. Mr. Duerr enjoys hiking, bird watching, looking for wildlife, contemplation, photography, and other activities in and around the public lands on the White River National Forest, including Burnt

Mountain.  He plans to routinely return to the White River National Forest, including to the parcel on Burnt Mountain, to engage in the recreational and other activities described herein. Mr. Duerr's recreational and other enjoyment of this parcel will be seriously impaired and diminished by the tree cutting and proposed development of new ski runs on this parcel, which will irreparably harm the roadless character of this parcel and Mr. Duerr's ability to enjoy it in such a state.

8. Defendant Thomas Tidwell is the Chief of the United States Forest Service, which is an agency or instrumentality of the United States, and is charged with managing the federal lands and resources of the White River National Forest, including those portions of the Snowmass Ski Area located therein, in accordance and compliance with federal laws and regulations.

## STATUTORY AND REGULATORY FRAMEWORK

### A. The Wilderness Act And USFS Roadless Regulations

9. In enacting the Wilderness Act of 1964, 16 U.S.C. §§ 1131-1136, Congress created the National Wilderness Preservation System on public lands in national parks and national forests "to secure for the American people of present and future generations the benefits of an enduring resource of wilderness." *Id.* § 1131(a).  Congress directed that such wilderness areas "shall be administered for the use and enjoyment of the American people in such manner as will leave them unimpaired for future use and enjoyment as wilderness, and so as to provide for the protection of these areas [and] the preservation of their wilderness character." *Id.*  Congress further directed that "each agency administering any area designated as wilderness shall be responsible for preserving the wilderness character of the area and shall so administer such area

for such other purposes for which it may have been established as also to preserve its wilderness character." *Id.* § 1133(b).

   10. In the Act, Congress defined "wilderness" as an area, "in contrast with those areas where man and his own works dominate the landscape," "where the earth and its community of life are untrammeled by man, where man himself is a visitor who does not remain." 16 U.S.C. § 1131(c). In the Act, Congress further defined an objective set of criteria by which federal agencies must assess eligibility of public lands for potential long-term wilderness preservation, *i.e.*, the area

> (1) generally appears to have been affected primarily by the forces of nature, with the imprint of man's work substantially unnoticeable;
> (2) has outstanding opportunities for solitude or a primitive and unconfined type of recreation;
> (3) has at least five thousand acres of land or is of sufficient size as to make practicable its preservation and use in an unimpaired condition; and
> (4) may also contain ecological, geological, or other features of scientific, educational, scenic, or historical value.

*Id.* Among other protections afforded designated wilderness is a prohibition against roads: "there shall be . . . no permanent road within any wilderness area designated by this chapter and . . . there shall be no temporary road." *Id.* § 1133(c).

   11. As a threshold step to determining the eligibility of National Forest lands as wilderness, and therefore preserving such lands until USFS can decide whether to recommend designation of those lands to Congress for long-term wilderness preservation, USFS "[i]dentif[ies] and evaluate[s] lands that may be suitable for inclusion in the National Wilderness Preservation System," which is often completed as part of a Forest Plan revision process. 36 C.F.R. § 219.7(c)(2)(v). In its implementing regulation, the Service recognizes that "[w]ilderness will be made available for human use to the optimum extent consistent with the maintenance of primitive conditions," and that "[i]n resolving conflicts in resource use,

5

wilderness values will be dominant to the extent not limited by the Wilderness Act, subsequent establishing legislation, or the regulations in this part." *Id.* §§ 293.2(b)-(c).

12.     Because the nonexistence of roads is a key feature of wilderness under the Act and USFS regulations, *see* 16 U.S.C. § 1133(c); 36 C.F.R. § 293.6 ("there shall be in National Forest Wilderness . . . no temporary or permanent roads"), USFS regularly conducts an "inventory," often as part of a forest planning process, to determine what National Forest lands contain "roadless" characteristics, so that roadless areas can be preserved by USFS as potential wilderness until such time as USFS can prepare a wilderness study and ultimately recommend some or all of those roadless lands for wilderness designation to Congress. *See* 43 CFR 19.2 (Department of Interior regulation explaining that "[r]oadless area means a reasonably compact area of undeveloped Federal land which *possesses the general characteristics of a wilderness and within which there is no improved road* that is suitable for public travel by means of fourwheeled, motorized vehicles intended primarily for highway use") (emphasis added).  These "inventoried roadless areas" are "identified in a set of inventoried roadless area maps," although USFS may "subsequent[ly] update or revis[e] . . . those maps through the land management planning process."  36 C.F.R. § 294.11.

13.     On July 3, 2012, USFS promulgated new regulations with respect to Colorado Roadless Areas ("CRAs").  As those regulations explain, "[t]he intent of this regulation is to protect roadless values by restricting tree cutting, sale, and removal; road construction and reconstruction; and linear construction zones within" CRAs.  36 C.F.R. § 294.40; *see also id.* § 294.42 (generally prohibiting tree cutting in roadless areas). The regulations provide a list of "[r]esources or features that are often present in and characterize Colorado Roadless Areas," including:

>(1) High quality or undisturbed soil, water, and air;
>(2) Sources of public drinking water;
>(3) Diversity of plant and animal communities;
>(4) Habitat for threatened, endangered, proposed, candidate, and sensitive species, and for those species dependent on large, undisturbed areas of land;
>(5) Primitive, semi-primitive nonmotorized and semi-primitive motorized classes of dispersed recreation;
>(6) Reference landscapes;
>(7) Natural-appearing landscapes with high scenic quality;
>(8) Traditional cultural properties and sacred sites; and
>(9) Other locally identified unique characteristics.

*Id.* § 294.41. After the Service has, as part of an inventory, determined that a parcel of National Forest land satisfies these criteria, the agency adds it to the list of CRAs found at 36 C.F.R. § 294.49, where it remains until such time as USFS conducts a wilderness study and makes a recommendation to Congress concerning wilderness designation, pursuant to the protections outlined in the regulations (*e.g.*, no tree cutting).

14.    In the event that a modification of a CRA boundary is needed due to "changed circumstances," the Service "may modify the boundaries of any designated Colorado Roadless Area identified in § 294.49 or add new Colorado Roadless Areas." 36 C.F.R. § 294.47(a). Any "[m]odifications and additions will be reflected in the set of maps maintained at the national headquarters office of the Forest Service. . . . [and] [p]ublic notice with a minimum 90–day comment period will be provided for any proposed Colorado Roadless Area boundary modifications or additions." *Id.* Additionally, where there has simply been a factual error necessitating a boundary revision, USFS "may issue administrative corrections after public notice and a 30–day comment period." *Id.* § 294.47(b). Administrative corrections "are adjustments to remedy errors such as clerical or improvements in mapping technology . . . [or] based on improved field data due to updated imagery, global positioning system data, or other collected field data." *Id.*

15.     The manner in which the Service authorizes a private party to undertake any otherwise prohibited activity on Forest Service land (*e.g.*, tree cutting) is to issue a "special use authorization" to a private party for a specific activity on a specific tract of public land. *See* 36 C.F.R. § 251.50(a).  Authorization by the Service is usually given in the form of a special use "permit," which the Service defines as "a special use authorization which provides permission, without conveying an interest in land, to occupy and use National Forest System land or facilities for specified purposes, and which is both revocable and terminable." *Id.* § 251.51.  When appropriate, "[a]n authorized [USFS] officer may revoke or suspend a special use authorization . . . [a]t the discretion of the authorized officer for specific and compelling reasons in the public interest." *Id.* § 251.60(a)(2)(i).  Further, "[i]mmediate suspension of a special use authorization, in whole or in part, may be required when the authorized officer deems it necessary to protect the public health or safety or the environment." *Id.* § 251.60(f).

### B.     Administrative Procedure Act

16.     Where an entity or individual petitions a federal agency, pursuant to statute or regulation, to compel the agency to consider or reconsider an issue within its jurisdiction, the agency is required to provide "[p]rompt notice" "of the denial in whole or in part." 5 U.S.C. § 555(e).  "Except in affirming a prior denial or when the denial is self-explanatory, *the notice shall be accompanied by a brief statement of the grounds for denial*." *Id.* (emphasis added).

17.     Where an agency fails to provide a reasoned explanation for its denial of a petition or other request pursuant to statute or regulation, the agency's failure is arbitrary, capricious, and an abuse of discretion pursuant to 5 U.S.C. § 706(2). *See Motor Vehicles Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42-43 (1983).  Similarly, in responding to a

petition, an agency's actions are arbitrary and capricious if it fails to consider the relevant factors or fails to demonstrate that the choice it made based on those factors is a reasonable one. *Id.*

## FACTUAL BACKGROUND

### A. Characteristics Of Burnt Mountain

18. As Plaintiffs described in their July 16, 2012 petition and accompanying documents, the disputed parcel on Burnt Mountain consists of 600-1,000 acres, depending on buffer sizes, and is sandwiched between the inventoried 1,712-acre BMRA and the 181,000-acre Maroon Bells – Snowmass Wilderness Area. *See* Exhibit 1. The parcel is habitat to various species, including occasional use by the federally listed Canada lynx. Based on interviews with other recreational users of this parcel, an individual with longstanding knowledge of this parcel provided a declaration, as part of the petition, stating that the only structures that appear within this parcel are an historic cabin and a gate installed to regulate access to skiers. *Id.*

### B. The Service's Roadless Inventory And Subsequent Decisions

19. In 2002, the Service completed a Land and Resource Management Plan revision process for the White River National Forest. *See* http://www.fs.usda.gov/Internet/FSE_DOCUMENTS/fsbdev3_000999.pdf. As part of that process, the Service determined that an area on Burnt Mountain satisfied the agency's roadless criteria and thus the Service "inventoried" the 1,712-acre Burnt Mountain Roadless Area, thereby protecting it from certain types of development including tree cutting and ski run construction. *See* 36 C.F.R. § 294.49 (identifying the IBMRA as CRA # 289). That area is referred to in the Complaint as the IBMRA.

20. In stark contrast, however, without any explanation in the 2002 Forest Plan or accompanying decision documents, the Service entirely omitted from roadless inventory

consideration another portion of Burnt Mountain which is described in Paragraph 18 of the Complaint, although that parcel is directly adjacent to the IBMRA, is in fact roadless as that term is defined, and thus could have been part of the IBMRA inventory designation in 2002 had the Service appropriately considered it. This omitted parcel, which consists of approximately 600-1,000 acres depending on the size of buffers, and which would have totaled approximately 2,300-2,700 acres when considered in conjunction with the adjacent parcel that ultimately was inventoried as the IBMRA, is never even mentioned in the Forest Plan, nor is there any explanation for its omission.

21.     In 2006, relying on its prior omission of this parcel from the roadless inventory, the Service issued a site-specific decision purportedly authorizing, via a special use authorization, the Aspen Skiing Company to, *inter alia*, cut a substantial number of trees to create three new ski runs and a new egress trail on Burnt Mountain, within the parcel at issue that was inexplicably excluded from consideration during the 2002 inventory. The Service did not disclose in the 2006 decision the roadless characteristics of this parcel and how the cutting of ski runs and an egress trail would significantly impact the roadless characteristics of this unique area, nor did the decision explain how those impacts might permanently change the quality of this area and disqualify the parcel from potential wilderness designation in the future under the Wilderness Act.

    **C.**     **Legal Challenges To The Service's Conduct**

22.     In 2006, Plaintiffs TAI and Donald Duerr, along with other co-plaintiffs, brought suit in the U.S. District Court for the District of Colorado challenging various aspects of the Service's 2006 decision, including the agency's compliance with the National Environmental Policy Act, 42 U.S.C. § 4321-4370f. The court ultimately ruled in favor of the Service, *see Ark*

*Initiative v. U.S. Forest Serv.*, Civ. No. 06-2418, 2010 WL 3323661 (D. Colo. Aug. 18, 2010), and the U.S. Court of Appeals for the Tenth Circuit affirmed the district court, finding that the issues appealed had not been properly exhausted or preserved, although the court's ruling did not address in any fashion the issues in this case.

23.     In April 2012, Plaintiff TAI filed a lawsuit in the U.S. District Court for the District of Columbia seeking various records that had been withheld by the Service pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.  In particular, TAI sought records indicating whether the agency had ever considered the roadless nature of the parcel that was omitted from the IBMRA in 2002, and any documents that would shed light on whether this parcel does in fact satisfy the agency's own enumerated criteria to be inventoried as roadless. *See* 36 C.F.R. § 294.41.  That lawsuit is presently pending.  *See The Ark Initiative v. U.S. Forest Serv.*, Civ. No. 1:12-cv-640 (D.D.C.) (CKK).

### D.     Plaintiffs' Emergency Petition

24.     On July 16, 2012, Plaintiff TAI submitted a formal petition to the Service, pursuant to USFS regulations and the Administrative Procedure Act, presenting thirty pages of new information and evidence demonstrating that the Burnt Mountain parcel omitted from the IBMRA in 2002 satisfies the agency's own roadless criteria found at 36 C.F.R. § 294.41.  The petition included satellite imagery, maps, and a signed declaration from Plaintiff Donald Duerr explaining that based on his personal observations while hiking this parcel, in addition to his expert analysis of satellite imagery and other recent information, the parcel is in fact "roadless" as that term is defined by USFS regulations.

25.     On that basis, the petition requested that the agency invoke its authority, pursuant to 36 C.F.R. § 251.60, to temporarily suspend, on an emergency basis, the narrow authorization

to proceed with activities within this parcel until such time as the Service can assess this parcel and make a final determination concerning the roadlessness of this tract in light of the new information presented, considering that the best available evidence suggests that the Service's omission of the parcel from the IBMRA was an "administrative error," as described at 36 C.F.R. § 294.47(b), or at least warranted a fresh consideration based on "changed circumstances." *See* 36 C.F.R. § 294.47(a). Because, on information and belief, the Aspen Skiing Company intended to begin cutting trees in the near future, the petition requested a response from the Service by July 20, 2012.

26. After several attempts by Plaintiffs to gather information from the Service to determine whether, and when, a response to the petition would be forthcoming – during which time Plaintiffs deferred filing litigation based on the assumption that the agency was giving the petition and voluminous new information contained therein serious consideration – the Service sent its response to the petition on August 17, 2012, which was not received by Plaintiffs until August 22, 2012 via U.S. mail.

27. In the response, White River National Forest Supervisor Scott Fitzwilliams indicated that the agency had considered TAI's request, and as a result of that consideration the Service "do[es] not anticipate to authorize any tree cutting for the egress trail at this time within the old" IBMRA – an area that the Service included in its inventoried roadless area in 2002, but which has since been excluded from the IBMRA due to a recent regulation. *See generally* 77 Fed. Reg. 39576. Therefore, with respect to the egress trail, the Service appears to have granted TAI's request not to cut any trees there.

28. In stark contrast, with respect to the remainder of the petition, where the substantial majority of the tree cutting and other work to be done on the parcel will occur (*i.e.*,

the parcel which was inadvertently omitted from the IBMRA in 2002 without explanation), the agency simply stated that tree cutting "can be implemented" following the prior litigation in Colorado, and stated that the Service was "working with the Aspen Skiing Company on the implementation schedule" for tree cutting and related activities.  The Service summarily asserted that it was "denying [the] request to suspend the special use authorization for the project."  The Service did not, however, provide any explanation for the partial denial, particularly any explanation for why a denial of Plaintiffs' request with respect to the new ski runs was appropriate in view of the voluminous information and evidence submitted in the petition which the Service stated that it gave "further consideration" to before providing its response.  Nor did the Service provide any explanation as to why, in response to Plaintiffs' petition, it was treating one portion of non-inventoried land (*i.e.*, where the egress trail was to be constructed) in a different manner from another portion of non-inventoried (*i.e.*, where the three ski runs are to be constructed), as the agency opted not to authorize tree cutting and other irreparable activities in the former but authorized extensive cutting in the latter.

      E.    **Aspen Skiing Company's Tree Cutting Activities**

29.    On August 31, 2012 – just over one week after Plaintiffs obtained the petition denial (August 22, 2012) – the Aspen Times reported that the Aspen Skiing Company was proceeding with tree cutting on Burnt Mountain in the area that was the primary subject of Plaintiff's petition.

30.    On information and belief, pursuant to the Service's special use authorization – which Plaintiffs' petition had requested that the Service suspend for the purpose of considering the new information presented in Plaintiffs' petition – the Aspen Skiing Company has begun

felling trees on the parcel in the past few days.  On information and belief, although cutting has commenced, the majority of trees have not been cut at this time.

## PLAINTIFFS' CLAIM FOR RELIEF

31.     By failing to provide any explanation as to why the Service was denying Plaintiffs' petition as to tree cutting on the omitted Burnt Mountain parcel despite the new information presented therein strongly indicating the existence of an "administrative error" or "changed circumstances" pursuant to the Service's own roadless inventory regulations, the Service violated 5 U.S.C. § 555(e), which requires, at minimum, "a brief statement of the grounds for denial."

32.     By failing to provide any explanation as to why, in response to Plaintiffs' petition, the Forest Service had decided to treat two similarly situated parcels of roadless non-inventoried land differently – by prohibiting tree cutting and other activities on the egress trail while authorizing tree cutting on the adjacent parcel for the construction of new ski runs – the agency failed to provide a rational explanation for this discrepancy based on the relevant factors, and thus acted arbitrarily and capriciously in violation of 5 U.S.C. § 706(2).

WHEREFORE, Plaintiffs respectfully request that this Court:

1.     Declare Defendant in violation of the Administrative Procedure Act;

2.     Vacate and remand Defendant's petition denial for further consideration and explanation;

3.     Preliminarily and permanently enjoin Defendant's special use authorization to the Aspen Skiing Company for this parcel unless and until Defendant grants Plaintiffs' petition or provides a legally permissible explanation for its denial of the petition in whole or in part;

4. Award Plaintiffs their costs and attorneys' fees; and

5. Award Plaintiffs such other and further relief as the Court may deem just and proper.

Respectfully submitted,

*/s/ William S. Eubanks II*
William S. Eubanks II (D.C. Bar No. 987036)

*/s/ Eric R. Glitzenstein*
Eric R. Glitzenstein (D.C. Bar No. 358287)

Meyer Glitzenstein & Crystal
1601 Connecticut Ave., N.W., Suite 700
Washington, D.C. 20009
(202) 588-5206
Fax (202) 588-5049
beubanks@meyerglitz.com
eglitzenstein@meyerglitz.com

September 5, 2012

## VERIFICATION BY PLAINTIFFS
## THE ARK INITIATIVE AND DONALD DUERR

I have reviewed the Complaint in its entirety. Pursuant to 28 U.S.C. § 1746, I verify under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on September 5, 2012.

Executed by:

*/s/ DJ Duerr*
Donald Duerr