**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **THE ARK INITIATIVE** | |
| **and** | |
| **DONALD DUERR,** | |
| **Plaintiffs,** | |
| **v.** | **Civil Action No. 12-1467 (JEB)** |
| **THOMAS L. TIDWELL, Chief of the U.S. Forest Service,** | |
| **Defendant,** | |
| **and** | |
| **ASPEN SKIING COMPANY,** | |
| **Defendant-Intervenor.** | |

<u>**MEMORANDUM OPINION**</u>

In the mountains of Colorado, Aspen Skiing Company has begun cutting trees to create a new ski run on the edge of Snowmass ski resort.  Plaintiffs – environmental group the Ark Initiative and its founder Donald Duerr – believe that the parcel where the trees grow should be designated "roadless," which they claim would block the tree removal.  To that end, Plaintiffs sent the U.S. Forest Service an "Emergency Petition" in July, asking the agency to add the parcel to its inventory of roadless areas and suspend the permit that allows Aspen Skiing to cut the trees.  The Forest Service denied the request, explaining its reasoning in two short letters.

Plaintiffs now complain in this Court that the Forest Service gave an inadequate explanation for its denial.  They ask the Court to enjoin Aspen Skiing from cutting trees until the

Forest Service justifies its decision.  To accomplish such purpose, Plaintiffs moved for a preliminary injunction.  With the parties' consent, the Court consolidated the preliminary-injunction hearing with a hearing on the merits, making Plaintiffs' Motion for a Preliminary Injunction akin to a motion for summary judgment.  The Forest Service and Intervenor Aspen Skiing have simultaneously moved to dismiss the case for lack of subject-matter jurisdiction or, in the alternative, for summary judgment.  Concluding that it has jurisdiction but that the Forest Service adequately explained its decision, the Court will deny Plaintiffs' Motion for a Preliminary Injunction and enter judgment for the agency.

## I.     Background

This case is about a parcel of land, approximately one square mile in area, on Burnt Mountain in White River National Forest, Colorado, referred to throughout as the "Burnt Mountain parcel."  This parcel lies entirely inside Snowmass Ski Area, operated by Aspen Skiing.  The Court will first set forth the regulatory framework surrounding "roadless" designations and then describe the procedural history of this dispute.

### A.     Regulatory Framework

The Forest Service manages public lands in the National Forest System.  See 36 C.F.R. § 200.3(b)(2) (citing statutory authority).  To protect pristine parcels in those forests, the Forest Service limits activity on land that it deems a "roadless area."  See 36 C.F.R. §§ 294.42-.44. Those roadless areas may later gain statutory protection by congressional designation as "wilderness areas" – defined by a contemplative Congress as "an area where the earth and its community of life are untrammeled by man, where man himself is a visitor who does not remain."  16 U.S.C. § 1131(c); see 16 U.S.C. § 1133.

The "[r]esources or features that are often present in and characterize" roadless areas are: "High quality or undisturbed soil, water, and air"; "Sources of public drinking water"; "Diversity of plant and animal communities"; "Habitat for threatened, endangered, proposed, candidate, and sensitive species, and for those species dependent on large, undisturbed areas of land"; "Primitive, semi-primitive non-motorized and semi-primitive motorized classes of dispersed recreation"; "Reference landscapes"; "Natural-appearing landscapes with high scenic quality"; "Traditional cultural properties and sacred sites"; and "Other locally identified unique characteristics."  36 C.F.R. § 294.41 (Colorado-specific definition); see also Roadless Area Conservation Rule, 66 Fed. Reg. 3244, 3272 (Jan. 12, 2001) (listing same characteristics).

In most national forests, the 2001 Roadless Area Conservation Rule governs the use of roadless areas.  See Wyoming v. USDA, 661 F.3d 1209 (10th Cir. 2011) (upholding Roadless Area Conservation Rule).  After promulgating that Rule, the Forest Service updated its list of roadless areas in the White River National Forest (which it calls "inventoried roadless areas") in 2002.  See 67 Fed. Reg. 39,383, 39,384 (June 7, 2002); 1 Forest Service, Final Environmental Impact Statement for the White River National Forest Land and Resource Management Plan 2002 Revision at 3-523 to -536 (2002), S 659-72.[1]  That inventory added the Burnt Mountain Inventoried Roadless Area, which is adjacent to the Burnt Mountain parcel in dispute here, but omitted the parcel itself from the roadless list.  See 3 Forest Service, 2002 Final Environmental Impact Statement at C-11, S 1620.  Plaintiffs never commented on the omission of the Burnt Mountain parcel.

Because a one-size-fits-all approach does not always work, especially in vast Western States with massive national forests, the Forest Service allowed States to petition for tailored

---

[1] The Administrative Record in this case uses two parallel numbering schemes because of prior litigation.  Page numbers for documents in the new Burnt Mountain record begin with "B," and page numbers for documents in the Snowmass record used in prior litigation begin with "S."

rules as an alternative to the 2001 nationwide Roadless Area Conservation Rule just discussed. <u>See</u> 36 C.F.R. § 294.12 (must submit petition by November 13, 2006).  Colorado petitioned for such a tailored rule.  <u>See</u> Letter from Gov. Bill Owens to Mike Johanns, Sec'y of Agric., *et al.* (Nov. 13, 2006), B 95.  Because of Colorado-specific "situations and concerns" – including "accommodating existing permitted or allocated ski areas" – the Forest Service granted the petition and last summer promulgated a special rule for Colorado: the Colorado Roadless Areas Rule.  <u>See</u> 77 Fed. Reg. 39,576, 39,577 (July 3, 2012).  The final Rule emerged only after years of work by both the State and Federal Governments and extensive public involvement, including: Colorado legislation forming a bipartisan task force to study the issue in 2005; nine public meetings in Colorado, six deliberative meetings open to the public, and 40,000 public comments reviewed by the task force in 2005 and 2006; a petition by Governor Bill Owens in 2006; a revised petition by Governor Bill Ritter in 2007; a notice of intent to prepare an environmental impact statement by the Forest Service in 2007 that received 88,000 comments; a proposed rule by the Forest Service in 2008 that entailed nine public meetings and received another 106,000 comments; a revised petition by Colorado in 2010 after receiving 22,000 more comments; and a second proposed rule by the Forest Service in 2011 with nine more public meetings and 56,000 more comments.  <u>See</u> 2 Forest Service, Rulemaking for Colorado Roadless Areas: Final Environmental Impact Statement at 3, 8-9 (2012), B 619, 624-25.

The Colorado Roadless Rule, mirroring the Roadless Area Conservation Rule, imposed a general ban on tree cutting in roadless areas.  "Trees may not be cut, sold, or removed in Colorado Roadless Areas, except as provided in paragraph (b) and (c) of this section."  36 C.F.R. § 294.42(a).  Those exceptions allow cutting, however, when "the responsible official determines the activity is consistent with the applicable land management plan," and "[t]ree cutting, sale, or

removal is incidental to the implementation of a management activity not otherwise prohibited by this subpart."  36 C.F.R. § 294.42(b); <u>see also</u> 36 C.F.R. § 294.42(c)(5).

As part of the Colorado Roadless Rule, the Forest Service again updated its list of roadless areas this year, adding hundreds of thousands of acres to its inventory.  <u>See</u> 77 Fed. Reg. at 39,582-83.  The Forest Service also made a change crucial to the dispute here: its inventory excluded from roadless designation land permitted for skiing to "ensure future ski area expansions within existing permit boundaries and forest plan allocations are not in conflict with desired conditions provided through the final rule and address one of the State-specific concerns identified by the State of Colorado."  <u>Id.</u> at 39,578; <u>see also</u> <u>id.</u> at 39,582.  In other words, if a previous roadless area lay in a permitted ski area, its roadless designation was removed.  8300 such acres were delisted, including 80 acres in the Burnt Mountain Inventoried Roadless Area that overlapped with the Snowmass Ski Area.  <u>See</u> 2 Forest Service, 2012 Final Environmental Impact Statement at 254 tbl.3-52, B 870.  The Burnt Mountain parcel at issue here was not removed because it had never been designated roadless in the first place.  Once more, Plaintiffs submitted no comments.

     B.    <u>Procedural History</u>

           1.    *Previous Litigation*

In 1994, the Forest Service approved the Snowmass Ski Area Master Development Plan, authorizing Aspen Skiing to make significant changes at Snowmass.  <u>See</u> Record of Decision (March 1994), S 4185; <u>see also</u> Ski Area Term Special Use Permit (July 13, 1995), S 5566 (special use permit for "constructing, operating, and maintaining" Snowmass Ski Area, subject to permit terms).  The Plan included building trails on Burnt Mountain and performing attendant "glading" – that is, selective tree cutting.  <u>See</u> Record of Decision at 5-10, S 4195-200.  In 2003,

Aspen Skiing amended the Snowmass Master Plan, altering some of its designs for Burnt

Mountain.  See Snowmass Mountain Master Plan Amendment 2003, S 5741.  The Forest Service

"accepted" the amendments but cautioned that it would "review each action in detail prior to

giving any final Forest Service approval."  Letter from Jim M. Upchurch, Forest Service, to Jim

Wahlstrom, Snowmass Village (Apr. 3, 2003), S 5898-99.

        The next month, Aspen Skiing formally requested permission to construct trails and

perform glading on Burnt Mountain over the summer of 2004.  See Letter from Victor Gerdin,

Aspen Skiing, to Upchurch *et al.* at 2-3 (May 2, 2003), S 3058-59.  Almost three years later, after

extensive public comment and a 121-page environmental assessment, the Forest Service

approved the request in a Decision Notice.  See Decision Notice (Feb. 16, 2006), S 4685; Forest

Service, Final Environmental Assessment for the Snowmass Ski Area Master Plan Amendment

Ski Area Improvements (Feb. 16, 2006), S 4746.

        Plaintiffs first appealed the Decision Notice within the Forest Service.  See Notice of

Appeal (Apr. 10, 2006), S 4868.  One of their many complaints was that the Decision Notice had

ignored areas that had roadless characteristics but not the official "roadless area" designation –

including the Burnt Mountain parcel.  These were not throwaway comments hidden in footnotes.

The appeal spent two pages arguing that "it was arbitrary, capricious and an abuse of discretion

for the Forest Service to exclude the roadless lands – located along the east side of the Snowmass

Ski Area – from the inventoried Burnt Mountain Roadless Area."  Id. at 115-17, S 4982-84.  And

it spent another 11 pages objecting to the Decision Notice's failure to disclose that the Burnt

Mountain parcel was roadless and evaluate how the construction and glading would affect the

parcel.  See id. at 56-67, S 4923-34.  The Forest Service affirmed its decision with respect to the

Burnt Mountain parcel, saying that altering the roadless inventory was outside the scope of the

proceedings.  <u>See</u> Letter from Greg Griffith, Forest Service, to Ark Initiative *et al.* (May 22,

2006), S 5121 (adopting and incorporating recommendation of Peter L. Clark, Forest Service,

Recommendation Memorandum for Snowmass Master Plan Amendment and Ski Area

Improvement EA at 20-22, 29-30 (May 19, 2006), S 5085-87, 5094-95).

      Having exhausted their administrative appeals, Plaintiffs then challenged the Forest

Service's Decision Notice in federal court.  The objections relating to the Burnt Mountain parcel,

however, were not among the issues they raised in the suit.  The U.S. District Court for the

District of Colorado upheld the Decision Notice.  <u>See</u> <u>Ark Initiative v. Forest Serv.</u>, No. 06-cv-

2418, 2010 WL 3323661 (D. Colo. Aug. 18, 2010).  The Tenth Circuit affirmed.  <u>See</u> <u>Ark</u>

<u>Initiative v. Forest Serv.</u>, 660 F.3d 1256 (10th Cir. 2011).

      2.    *Current Dispute*

      In the summer of 2012, it finally looked like Aspen Skiing would be able to proceed with

the long-delayed construction and glading.  But then on July 16, 2012, Plaintiffs submitted an

"Emergency Petition" to the Forest Service, alerting the agency to "an erroneous roadless

determination with respect to Burnt Mountain" because the Burnt Mountain parcel "does in fact

satisfy the Service's own roadlessness criteria."  <u>See</u> Emergency Petition Concerning Roadless

Eligibi[l]ity of Burnt Mountain in the White River National Forest at 1-2 (July 16, 2012), B 26-

27.  Plaintiffs asked the Forest Service to "revisit its roadless determination for Burnt Mountain"

and, in the meantime, "immediately suspend, pursuant to USFS regulations, the special use

authorization for [Aspen Skiing's] project."  <u>Id.</u> at 2, B 27.  To correct this "mistake," Plaintiffs

proposed that the Forest Service make an "administrative correction" to the Burnt Mountain

Colorado Roadless Area boundary under 36 C.F.R. § 294.47(b) based on a "clerical error[]" –

here, overlooking the parcel's roadless characteristics during previous inventories – or on

"improved field data due to updated imagery, global positioning system data, or other collected field data" – apparently Google Earth's upgraded resolution.  <u>See</u> Emergency Petition at 9, B 34; First Decl. of Donald J. Duerr, ¶ 13, B 45-46.  Alternatively, the Forest Service could "modify" the boundary under 36 C.F.R. § 294.47(a) based on "changed circumstances" – specifically, Duerr's observations during a recent hike.  <u>See</u> Emergency Petition at 9 n.2, B 34; Duerr Decl. 1, ¶¶ 10-12, B 43-45.

The Forest Service rejected the request in two letters, each shorter than one page.  First, a Forest Service Supervisor explained that the 2006 Decision Notice and subsequent litigation had already decided the issue:  "[A]s I believe you are aware, tree cutting and other activities that occur outside of the old Burnt Mountain IRA can be implemented based on the May 22, 2006 Appeal Deciding Officer's letter and subsequent November 8, 2011 U.S. Tenth Circuit Court of Appeals' ruling."  Letter from Scott G. Fitzwilliams, Forest Supervisor, Forest Service, to William S. Eubanks II, Counsel, Ark Initiative (Aug. 17, 2012), B 56.  Second, the Chief of the Forest Service said that the new Colorado Roadless Rule independently barred the petition:  "The roadless area inventory for the Colorado Roadless Rule excluded lands within ski area permitted boundaries. . . .  The expansion activities proposed by the Aspen Ski Company are within their Master Development Plan in the permitted boundary and outside of the Burnt Mountain CRA."  Letter from Thomas L. Tidwell, Chief, Forest Service, to Eubanks (Sept. 7, 2012), B 57.

Plaintiffs then filed suit in this Court, complaining that the explanation in the letters was inadequate and asking for declaratory and injunctive relief.  They next moved for a preliminary injunction on September 11 to halt the tree removal until the Court could evaluate the Forest Service's response.  Unfortunately for Plaintiffs, that was not quick enough:  On August 28, the Forest Service gave Aspen Skiing a "formal Notice to Proceed."  Letter from Fitzwilliams to

Steve Sewell, Aspen Skiing (Aug. 28, 2012), B 21.  Over the next ten days, Aspen Skiing cut the

vast majority of trees it planned to cut.  <u>See</u> Aspen Skiing Mot., Exh. 18 (Decl. of David Perry),

¶¶ 4-6.  Now all that remains is cutting "approximately 20 to 25 trees of 6-inch diameter or

greater in two locations" and removing "brush, limbs, branches, and other potential hazards."

<u>Id.</u>, ¶ 6.

The parties agreed in a conference call to Chambers that the preliminary injunction and

merits determinations would be combined.  As a result, the Forest Service now moves to dismiss

for want of subject-matter jurisdiction, claiming that Plaintiffs lack standing, or in the alternative

moves for summary judgment.  Aspen Skiing also moves to dismiss for want of subject-matter

jurisdiction, claiming that sovereign immunity bars the suit, or in the alternative asks the Court to

limit Plaintiffs' injunction.

As Mother Nature waits for no court and Aspen Skiing must cut the trees before the

seasons change, the parties agreed to expedited briefing.  The Court held a hearing on all pending

motions on October 4, 2012.  This Opinion follows the next day.

## II.    Legal Standard

Plaintiffs moved for a preliminary injunction but agreed to consolidate their request with

a decision on the merits.  <u>See</u> Fed. R. Civ. P. 65(a)(2) ("Before or after beginning the hearing on

a motion for a preliminary injunction, the court may advance the trial on the merits and

consolidate it with the hearing.").  The Court will therefore treat Plaintiffs' Motion for a

Preliminary Injunction like a motion for summary judgment.  <u>See</u> <u>Teva Pharm. USA, Inc. v.</u>

<u>FDA</u>, 441 F.3d 1, 3 (D.C. Cir. 2006); <u>Ass'n of Flight Attendants, AFL-CIO v. USAir, Inc.</u>, 24

F.3d 1432, 1436 (D.C. Cir. 1994).  The Forest Service's Motion seeks dismissal and, in the

alternative, summary judgment.  Aspen Skiing's Motion seeks dismissal and, in the alternative,

for the Court to strike part of Plaintiffs' request for relief.  The three Motions thus entail two distinct standards of review.

>     A.     <u>Motion to Dismiss</u>

In evaluating Defendants' Motions to Dismiss, the Court must "treat the [C]omplaint's factual allegations as true . . . and must grant [P]laintiff[s] 'the benefit of all inferences that can be derived from the facts alleged.'"  <u>Sparrow v. United Air Lines, Inc.</u>, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting <u>Schuler v. United States</u>, 617 F.2d 605, 608 (D.C. Cir. 1979)) (internal citation omitted); <u>see also</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).  The Court need not accept as true, however, "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the Complaint.  <u>Trudeau v. FTC</u>, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986)) (internal quotation marks omitted).

To survive a motion to dismiss under Rule 12(b)(1), Plaintiffs bear the burden of proving that the Court has subject-matter jurisdiction to hear their claims.  <u>See</u> <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992); <u>U.S. Ecology, Inc. v. Dep't of Interior</u>, 231 F.3d 20, 24 (D.C. Cir. 2000).  A court has an "independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party."  <u>Arbaugh v. Y & H Corp.</u>, 546 U.S. 500, 514 (2006).  "For this reason 'the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim."  <u>Grand Lodge of the Fraternal Order of Police v. Ashcroft</u>, 185 F. Supp. 2d 9, 13-14 (D.D.C. 2001) (quoting 5A Charles A. Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1350 (2d ed. 1987) (alteration in original)).  Additionally, unlike with a motion to dismiss under Rule 12(b)(6), the Court "may consider materials outside the pleadings

in deciding whether to grant a motion to dismiss for lack of jurisdiction." Jerome Stevens

Pharm. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005); see also Venetian Casino Resort, LLC v.

EEOC, 409 F.3d 359, 366 (D.C. Cir. 2005) ("given the present posture of this case – a dismissal

under Rule 12(b)(1) on ripeness grounds – the court may consider materials outside the

pleadings"); Herbert v. Nat'l Acad. of Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992).

      B.    Motion for Summary Judgment

Summary judgment may be granted if "the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v.

Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). A fact is "material" if it is capable of affecting the

substantive outcome of the litigation. See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at

895. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party. See Scott v. Harris, 550 U.S. 372, 380 (2007); Liberty Lobby, 477

U.S. at 248; Holcomb, 433 F.3d at 895.

Although styled Motions for Summary Judgment, the pleadings in this case more

accurately seek the Court's review of an administrative decision. The standard set forth in Rule

56(c), therefore, does not apply because of the limited role of a court in reviewing the

administrative record. See Sierra Club v. Mainella, 459 F. Supp. 2d 76, 89-90 (D.D.C. 2006)

(citing Nat'l Wilderness Inst. v. Army Corps of Eng'rs, 2005 WL 691775, at *7 (D.D.C. 2005);

Fund for Animals v. Babbitt, 903 F. Supp. 96, 105 (D.D.C. 1995), amended on other grounds,

967 F. Supp. 6 (D.D.C. 1997)). "[T]he function of the district court is to determine whether or

not as a matter of law the evidence in the administrative record permitted the agency to make the

decision it did." Id. at 90 (citation omitted). "Summary judgment thus serves as the mechanism

for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." Id. (citing Richards v. INS, 554 F.2d 1173, 1177 & n.28 (D.C. Cir. 1977), cited in Bloch v. Powell, 227 F. Supp. 2d 25, 31 (D.D.C. 2002), aff'd, 348 F.3d 1060 (D.C. Cir. 2003)).

The Administrative Procedure Act "sets forth the full extent of judicial authority to review executive agency action for procedural correctness." FCC v. Fox Television Stations, Inc., 556 U.S. 502, 513 (2009). It requires courts to "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. This is a "narrow" standard of review as courts defer to the agency's expertise. Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). An agency is required to "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." Id. (internal quotation marks omitted). The reviewing court "is not to substitute its judgment for that of the agency," id., and thus "may not supply a reasoned basis for the agency's action that the agency itself has not given." Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc., 419 U.S. 281, 285-86 (1974). Nevertheless, a decision that is not fully explained may be upheld "if the agency's path may reasonably be discerned." Id. at 286.

## III.   Analysis

On the merits, Plaintiffs contend that the Forest Service denied their Emergency Petition without a sufficient explanation. Before addressing this question, the Court must first resolve some preliminary issues – including ensuring that it has jurisdiction to hear the case.

A.     <u>Standing</u>

Article III of the Constitution limits the power of the federal judiciary to the resolution of

"Cases" and "Controversies."  U.S. Const. art. III, § 2; <u>see also</u> <u>Allen v. Wright</u>, 468 U.S. 737,

750 (1984) (discussing the case-or-controversy requirement).  "This limitation is no mere

formality: it 'defines with respect to the Judicial Branch the idea of separation of powers on

which the Federal Government is founded.'"  <u>Dominguez v. UAL Corp.</u>, 666 F.3d 1359, 1361

(D.C. Cir. 2012) (quoting <u>Allen</u>, 468 U.S. at 750).  Because "standing is an essential and

unchanging part of the case-or-controversy requirement of Article III," <u>Lujan</u>, 504 U.S. at 560,

finding that a plaintiff has standing is a necessary "predicate to any exercise of [the Court's]

jurisdiction." <u>Fla. Audubon Soc'y v. Bentsen</u>, 94 F.3d 658, 663 (D.C. Cir. 1996) (<i>en banc</i>).

"Every plaintiff in federal court," consequently, "bears the burden of establishing the

three elements that make up the 'irreducible constitutional minimum' of Article III standing:

injury-in-fact, causation, and redressability." <u>Dominguez</u>, 666 F.3d at 1362 (quoting <u>Lujan</u>, 504

U.S. at 560-61).  Standing for a procedural injury is "special," however, because a "person who

has been accorded a procedural right to protect his concrete interests can assert that right without

meeting all the normal standards for redressability and immediacy." <u>Lujan</u>, 504 U.S. at 572 n.7.

"A plaintiff who alleges a deprivation of a procedural protection to which he is entitled never has

to prove that if he had received the procedure the substantive result would have been altered.  All

that is necessary is to show that the procedural step was connected to the substantive result."

<u>Sugar Cane Growers Co-op. of Fla. v. Veneman</u>, 289 F.3d 89, 94-95 (D.C. Cir. 2002).  When

seeking review of an administrative action, the petitioning party "must support each element of

its claim to standing by affidavit or other evidence." <u>Sierra Club v. EPA</u>, 292 F.3d 895, 899

(D.C. Cir. 2002) (internal quotation marks omitted).

In "considering whether a plaintiff has Article III standing, a federal court must assume *arguendo* the merits of his or her legal claim." Parker v. District of Columbia, 478 F.3d 370, 377 (D.C. Cir. 2007), aff'd on other grounds sub nom. District of Columbia v. Heller, 554 U.S. 570 (2008).  That assumption ensures that a court does not resolve the merits while analyzing standing.  See City of Waukesha v. EPA, 320 F.3d 228, 235 (D.C. Cir. 2003).  The Court here must therefore assume *arguendo* that Plaintiffs' ultimate legal claim has merit – that is, that the Forest Service really should designate the Burnt Mountain parcel a roadless area.

Plaintiff Duerr easily satisfies standing's injury-in-fact requirement.  He declares that he regularly hikes on the Burnt Mountain parcel and that removal of the trees will strip the land of its pristine nature and drive away animals he likes to observe, diminishing his enjoyment of the land.  See Pls.' Mot., Exh. 7 (Second Decl. of Donald Duerr), ¶¶ 3-4, 13-16.  Such an injury is clearly adequate.  See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 183 (2000); Lujan, 504 U.S. at 562-63; Sierra Club v. Morton, 405 U.S. 727, 735 (1972).

Causation and redressability present far closer questions.  Because the trees' survival at this point turns on the roadless designation, the Court concludes that Duerr satisfies those requirements as well.  Here is the full chain of causation, link by link:  If Plaintiffs prevail on their ultimate legal claim here, then the Burnt Mountain parcel will be designated roadless.  If the parcel is designated roadless, Plaintiffs gain a procedural right to have a responsible official decide whether the cutting can proceed.  And that decision by the official on whether cutting can proceed controls whether Aspen Skiing will cut down the trees and thus whether Duerr will suffer his injury from diminished enjoyment of the land.

According to the Government, the roadless designation is beside the point here for two reasons.  First, the Government claims that the trees will be cut down anyway.  Even in roadless

areas, trees may be cut if a responsible official determines both that "the activity is consistent with the applicable land management plan" and that "[t]ree cutting, sale, or removal is incidental to the implementation of a management activity not otherwise prohibited by this subpart."  36 C.F.R. § 294.42(b); see also 36 C.F.R. § 294.42(c) (same); Proposed Colorado Roadless Rule, 76 Fed. Reg. 21,272, 21,276 (Apr. 15, 2011) (official makes both determinations).  Because the trees here are in ski areas and are being felled to create approved ski runs, the Government claims that both prongs of the exception are met.  The problem with that reasoning, however, is that the regulations require a "responsible official" to determine that the exception is met; it is not enough for the Government to assert in litigation that these trees fit the exception.  To put it simply:  Without the roadless designation, Aspen Skiing can immediately cut the trees.  With the designation, the trees stay standing unless and until a responsible official makes the appropriate findings.

Second, since the Forest Service always has to approve tree removal in national forests, even without a roadless designation, the Government asserted at the hearing that the designation itself adds no procedural right.  (The Government did not specify precisely what standard would apply outside of a roadless area in a national forest.)  "Roadless area," nevertheless, is a heightened designation, presumably meaning that cutting trees in a national forest is easier than cutting trees in a roadless area.  Nothing before the Court suggests that the inquiries for roadless and non-roadless areas are identical or that the procedural right is hollow.

While the chain here is long, each link seems to hold; thus, causation and redressability are satisfied.  Since Duerr himself has standing, the Court need not address standing for the Ark Initiative.  See Hall v. Sebelius, 667 F.3d 1293, 1295 (D.C. Cir. 2012).

B.      Other Preliminary Issues

Defendants also assert defenses of timeliness and *res judicata*.  Aspen Skiing, for

example, claims that a statute of limitations bars Plaintiffs' suit.  According to Intervenor,

Plaintiffs are actually attempting to challenge the Forest Service's 2006 Decision Notice, and 28

U.S.C. § 2401(a) bars "every civil action commenced against the United States . . . unless the

complaint is filed within six years after the right of action first accrues."  That six-year statute of

limitations is a "condition attached to the government's waiver of sovereign immunity" and is

thus "jurisdictional."  P & V Enters. v. Army Corps of Eng'rs, 516 F.3d 1021, 1026 (D.C. Cir.

2008) (citation omitted).

The Government, conversely, claims that *res judicata* requires dismissal.  "Under the

doctrine of claim preclusion, a final judgment forecloses successive litigation of the very same

claim, whether or not relitigation of the claim raises the same issues as the earlier suit."  Taylor

v. Sturgell, 553 U.S. 880, 892 (2008) (internal quotation marks omitted).  Claim preclusion aims

to weed out "matters that both might and should have been advanced in the first litigation" in

order "to force the parties to raise these matters in their first suit."  18 Charles Alan Wright *et al.*,

Federal Practice & Procedure § 4406 (2d ed. 2002) (emphasis omitted).  The Government, like

Aspen Skiing, asserts that Plaintiffs are really challenging the 2006 Decision Notice.  Because

they objected in their administrative appeal to the omission of the Burnt Mountain parcel from

the roadless inventory, Plaintiffs could have and should have raised that objection in their

subsequent lawsuit challenging the 2006 Decision Notice.  Even if the objection is different, the

Government asserts, claim preclusion still bars relitigating the validity of the 2006 Decision

Notice.

Both defenses are tempting.  The "clerical error" and "changed circumstances" alleged here, see 36 C.F.R. §§ 294.47(a)-(b), are flimsy – observations on a recent hike, improved resolution on Google Maps, etc.  In substance, Plaintiffs really do appear to be challenging the Forest Service's 2006 decision.  Formally, however, Plaintiffs' challenge is to the Forest Service's rejection of their 2012 Petition.  As the Government concedes, § 2401(a) and claim preclusion would offer no defense if there were a genuine change in circumstances – e.g., the sole road on a tract falling into disuse.  The deficiency of the changed circumstances alleged here could justify affirming the Forest Service on the merits.  It does not, however, stop Plaintiffs from entering the courtroom door.  Sovereign immunity and res judicata thus impose no barriers here.

C.    Merits

Through the familiar arbitrary-and-capricious standard of 5 U.S.C. § 706(2), the Administrative Procedure Act requires an agency to "articulate a satisfactory explanation for its action."  State Farm, 463 U.S. at 43 (internal quotation marks omitted).  In the context of a "denial in whole or in part of a written application, petition, or other request of an interested person made in connection with any agency proceeding," the APA requires the agency to give "[p]rompt notice" of the decision.  5 U.S.C. § 555(e).  "Except in affirming a prior denial or when the denial is self-explanatory, the notice shall be accompanied by a brief statement of the grounds for denial."  Id. (emphasis added).

The D.C. Circuit has described the "brief statement" requirement of § 555(e) as "minimal," Butte County v. Hogen, 613 F.3d 190, 194 (D.C. Cir. 2010), saying that it "probably does not add to, and may even diminish, the burden put on an agency by the APA's provision for judicial review."  Roelofs v. Secretary of Air Force, 628 F.2d 594, 601 (D.C. Cir. 1980).  At its

17

core, this requirement simply forces the agency to explain "why it chose to do what it did."

Tourus Records, Inc. v. DEA, 259 F.3d 731, 737 (D.C. Cir. 2001) (citation omitted).  The agency

explanations that the D.C. Circuit has branded too brief seem to be limited to single, conclusory

sentences.  See Butte County, 613 F.3d at 195 ("Yet the entirety of Interior's response to Butte

County was this: 'We are not inclined to revisit this decision now because the Office of the

Solicitor reviewed this matter in 2003, and concurred in the NIGC's determination of March 14,

2003.'") (alteration omitted); Tourus Records, 259 F.3d at 737 ("The letter says nothing other

than that the 'Affidavit of Indigency you submitted in lieu of a cost bond is not adequately

supported.'  That is not a statement of reasoning, but of conclusion.") (citation omitted); see also

Roelofs, 628 F.2d at 596 (agency "prepared no statement of findings and offered no explanation

for its decision").

        Here, the Forest Service gave two explanations in two separate letters.  (Plaintiffs have

made no objection to the split responses.)  The first letter told Plaintiffs that, "as I believe you are

aware, tree cutting and other activities that occur outside of the old Burnt Mountain IRA can be

implemented based on the May 22, 2006 Appeal Deciding Officer's letter and subsequent

November 8, 2011 U.S. Tenth Circuit Court of Appeals' ruling."  Letter from Fitzwilliams to

Eubanks, B 56.  That letter seems to reiterate the Forest Service's 2006 denial of Plaintiffs'

request to designate the Burnt Mountain parcel roadless.  Under that understanding, the Forest

Service would be "affirming a prior denial" under § 555(e) and thus would have no obligation to

provide a further explanation.  The Court, however, need not resolve the adequacy of the first

letter because the second suffices.

        In the second letter, the Chief of the Forest Service relied on the Colorado Roadless

Rule's bar of roadless areas within permitted ski areas:  "The roadless area inventory for the

18

Colorado Roadless Rule excluded lands within ski area permitted boundaries.  This change was applied to the Burnt Mountain roadless area. . . .  The expansion activities proposed by the Aspen Ski Company are within their Master Development Plan in the permitted boundary and outside of the Burnt Mountain CRA."  Letter from Tidwell to Eubanks, B 57.  In other words, it does not matter whether the Burnt Mountain parcel has the characteristics of a roadless area; the parcel is inside Snowmass Ski Area, so the Colorado Roadless Rule precludes designating it roadless.  Effectively, the Forest Service is saying that any error in earlier inventories is harmless because the Burnt Mountain parcel cannot qualify as roadless now anyway.

Plaintiffs claim that the Chief misread the Colorado Roadless Rule.  Specifically, they assert that the Rule carved out only areas that already fell within the agency's roadless inventory when the Rule went into effect, and this parcel was not in the inventory on that date.  See Pls.' Reply at 3-4 (citation and emphasis omitted).  They point to the Forest Service's calculation of the acres excluded by the Colorado Roadless Rule, which made no mention of areas (such as the Burnt Mountain parcel) with roadless characteristics that have not been inventoried.  See 77 Fed. Reg. at 39,578 ("The final rule inventory excludes approximately 8,300 acres of permitted ski area boundaries or ski area management allocations from CRAs, which include roadless acres with degraded roadless area characteristics due to the proximity to a major recreational development and is less than 0.2% of the CRAs.").

But the question for the Court is whether the Chief's explanation based on the Colorado Roadless Rule was arbitrary and capricious.  See also Auer v. Robbins, 519 U.S. 452, 461 (1997) (agency's interpretation of its own regulation is "controlling unless plainly erroneous or inconsistent with the regulation") (internal quotation marks omitted).  One permissible reading of the Colorado Roadless Rule – maybe even the best reading – is that the Rule precludes future

designation of roadless areas within ski permits.  Certainly the Colorado-specific concern about "accommodating existing permitted or allocated ski areas" applies with equal force to all land within a ski area.  77 Fed. Reg. at 39,577.  The Rule, furthermore, would create a bizarre regime if it excluded established roadless areas that fell within ski areas yet allowed other areas with roadless characteristics within ski areas to be added to the roadless inventory.  In sum, it was not arbitrary and capricious for the Chief to read the Colorado Roadless Rule as laying out a forward-looking "rule" prohibiting roadless designations in ski areas, and therefore disqualifying the Burnt Mountain parcel from roadless designation.

The Colorado Roadless Rule was not off-the-cuff rulemaking.  As the Forest Service explained in its letter, the Rule "is the result of extensive public involvement.  More than 310,000 public comments, over a 6-year period, were reviewed and considered in the development of the final rule."  Letter from Tidwell to Eubanks, B 57.  Plaintiffs chose not to comment on the Rule and thus cannot challenge it now.  If Plaintiffs wanted roadless designations in ski areas, they should have participated in the rulemaking.

## IV.   Conclusion

For the aforementioned reasons, the Court will deny Plaintiffs' Motion for a Preliminary Injunction and grant the Forest Service's Motion for Summary Judgment.  A separate Order consistent with this Opinion will be issued this day.

*/s/ James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  October 5, 2012